# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAWNEE/S.A.E. WAREHOUSE, INC., on behalf of itself and all others similarly situated, | )<br>)<br>)  Case No. _____<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)  **CLASS ACTION COMPLAINT**<br>) |
| CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION PRODUCTS, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC., UNITED COMPONENTS, INC. and THE CARLYLE GROUP, | )  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)  FILED: MAY 14, 2008<br>)  08CV2806           AEE<br>)  JUDGE SHADUR<br>)  MAGISTRATE JUDGE DENLOW<br>)<br>)<br>) |
| Defendants. | ) |

Plaintiff Pawnee/S.A.E. Warehouse, Inc., by its attorneys, individually and on behalf of a plaintiff class of direct purchasers (the "Class") defined below, brings this civil action against Defendants named in this Complaint for damages, costs, attorneys' fees, and injunctive relief under the antitrust laws of the United States, and demands a trial by jury. Plaintiff alleges that Defendants themselves or through their predecessors, controlled subsidiaries, or affiliates, conspired to fix, raise, maintain, and stabilize the price of replacement oil, engine air, cabin air, coolant, fuel, hydraulic, and transmission filters ("Filters") sold in the United States from at least as early as January 1, 1999 through the present (the "Class Period"), all in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. As a result of Defendants' unlawful conduct, Plaintiff and

members of the proposed Class paid higher prices for Filters than they would have paid in a competitive market, and have suffered antitrust injury to their business and property as a result. Plaintiff makes these allegations upon information and belief, except those allegations pertaining to Plaintiff, which Plaintiff alleges upon personal knowledge.

## JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to enjoin Defendants' further violations, as alleged in this Complaint.

2. This Court has subject matter jurisdiction of this action pursuant to Section 4(a) and 16 of the Clayton Act, 15 U.S.C. § 15(a) and 26, and 28 U.S.C. § 1331 and 1337.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. §§ 15 (a) and 22 because during the Class Period, one or more Defendants resided, transacted business, were found, or had agents in this District, and because a substantial portion of the affected interstate trade and commerce described in this Complaint has been carried out in this District.

4. This Court has personal jurisdiction over each Defendant because, inter alia, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped and delivered substantial quantities of Filters throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## DEFINITIONS

As used in this Complaint, the following terms have the following meanings:

5. "Class" is defined in Paragraph 29 below.

6. "Class Period" means the time period beginning at least January 1, 1999 through the present.

7. "Filters" includes, among other things, replacement oil, engine air, cabin air, coolant, fuel, hydraulic, and transmission filters. Filters are used to remove contaminants from combustion engines and related systems. Specifically, oil filters remove contaminants from the motor oil used to lubricate an engine; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; engine air filters prevent particulate matter from entering an engine's cylinders; cabin air filters prevent particulate matter from entering the vehicle's HVAC system; coolant filters remove solid contaminants from the coolant; hydraulic filters are used for a variety of applications; and transmission filters remove contaminants from an engine's transmission systems.

8. "Person" includes not only natural persons but also any other legal business entity, including without limitation corporations, partnerships and sole proprietorships.

9. References made in this Complaint to any corporation include any predecessors, successors, parents, subsidiaries, affiliates and divisions of that corporation.

## INTERSTATE COMMERCE

10. The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

11. During the Class Period, Defendants manufactured and sold and/or distributed substantial quantities of Filters in a continuous and uninterrupted flow of interstate and international commerce to customers throughout the United States.

## THE PARTIES

12.     Plaintiff Pawnee/S.A.E. Warehouse, Inc., is a South Dakota corporation with its principal place of business at 404 11th Street, Rapid City, South Dakota 57701-2682.  Plaintiff purchased Filters in the United States directly from one or more of the Defendants during the Class Period, and has suffered antitrust injury as a result of Defendants' unlawful conduct as alleged in this Complaint.

13.     Defendant Champion Laboratories, Inc. is a Delaware corporation with its principal place of business at 200 S. Forth Street, Albion, Illinois 62806.  During the Class Period, Defendant Champion manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: Champion Quality Oil Filters, Champion Quality Air Filters, Kleener® Cabin Air Filters, Champion Quality Fuel Filters, Champion Quality Transmission Filters, and PetroClear® Dispensing Filters.  Through its Luber-finer subsidiary, Champion manufactures and distributes heavy-duty Filters for, *inter alia,* transportation, off road/mining, marine, agriculture, and automotive light truck uses.

14.     Defendant United Components, Inc. is a Delaware corporation with its principal place of business at 14601 Highway 41 N., Evansville, Indiana 47725-9357.  Defendant Champion Laboratories, Inc. is a wholly-owned subsidiary of United Components, Inc.  During the Class Period, Defendant United Components manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.

15.     Defendant The Carlyle Group is a private investment group partnership with a business address at 1001 Pennsylvania Ave NW #220, Washington, DC 20004-2505.  The Carlyle Group owns Defendant United Components, Inc.  During the Class Period, Defendant

4

The Carlyle Group manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.

16.    Defendants Champion Laboratories, Inc., United Components Inc. and The Carlyle Group are collectively referred to in this Complaint as "Champion."

17.    Defendant Purolator Filters N.A. L.L.C. is a Delaware corporation with its principal place of business at 3200 Natal St., Fayetteville, North Carolina 28306-2845. During the Class Period, Defendant Purolator Filters manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: PureONE Oil Filters, PremiumPLUS Oil Filters, PureONE Air Filters, PremiumPLUS Media Air Filters, and BreatheEASY® Cabin Air Filters. Purolator Filters N.A. L.L.C. is a joint venture between Defendants Bosch U.S.A. and Mann + Hummel U.S.A., Inc.

18.    Defendant Bosch U.S.A. is a U. S. branch of Robert Bosch GmbH, a privately held German conglomerate. Bosch U.S.A.'s parent company, Robert Bosch LLC, is headquartered at 38000 Hills Tech Drive, Farmington, Michigan 48331. During the Class Period, Defendant Bosch U.S.A. manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: Bosch Premium Cabin Filters, Bosch Particulate Filters, Bosch Activated Charcoal Filters, Bosch Fuel Filters and Bosch FILTECH Oil Filters.

19.    Defendant Mann + Hummel U.S.A. is a Michigan corporation, and is the United States subsidiary of the MANN + HUMMEL Group, a German business entity. Mann + Hummel's U.S. business headquarters are at 6400 S. Sprinkle Road, Portage, Michigan 49002. During the Class Period, Defendant Bosch U.S.A. manufactured, sold and distributed Filters

throughout the United States directly or through its subsidiaries and affiliates, principally under the MANN-FILTER brand.

20.     Defendant ArvinMeritor Inc. is a Michigan corporation with its principal place of business at 2135 West Maple Road, Troy, MI 48084.  During the Class Period, Defendant ArvinMeritor manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.  Prior to April 2006, Defendant Purolator Filters N.A. L.L.C. was owned by ArvinMeritor Inc.

21.     Defendants Purolator Filters N.A. L.L.C., Bosch U.S.A., Mann + Hummel U.S.A. and ArvinMeritor Inc. are collectively referred to in this Complaint as "Purolator."

22.     Defendant Honeywell International ("Honeywell") is a Delaware corporation with its principal place of business at 100 Columbia Road, Morristown, New Jersey 07962.  During the Class Period, Defendant Honeywell International manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally through its Honeywell International Consumer Products Group division, and principally under the FRAM® filter brand.

23.     Defendant Wix Filtration Corp. LLC is a Delaware corporation with its principal place of business at One Wix Way, Gastonia, North Carolina 28054.  During the Class Period, Defendant Wix manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the Wix® Filter brand.

24.     Defendant Cummins Filtration Inc. is an Indiana corporation with its principal place of business at 2931 Elm Hill Pike, Nashville, Tennessee 37214.  During the Class Period, Defendant Cummins manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands:

OptiAir™, Magnum RS™, Direct Flow™, Fleetguard's FS1000™, Fuel Pro® filter, Diesel Pro® filter, Industrial Pro™ filter, Duramax™, and Venturi™ Combo System.

25. Defendant The Donaldson Company is a Delaware corporation with its principal place of business at 1400 West 94th St., Minneapolis, Minnesota 55431. During the Class Period, Defendant Donaldson manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the Donaldson brand.

26. Defendant Baldwin Filters, Inc. is a Delaware corporation with its principal place of business at 4400 E. Hwy. 30, Kearney, Nebraska 68848-6010. During the Class Period, Defendant Donaldson manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates under the Baldwin brand.

## CO-CONSPIRATORS

27. The acts alleged in this Complaint engaged in by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of the Defendants' business affairs.

28. Various other persons, firms and corporations not named as Defendants in this Complaint have participated as co-conspirators in the violations alleged in this Complaint and have aided, abetted and performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action against Defendants under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates and co-conspirators, and government entities) who purchased Filters in the United States directly from the Defendants or any of their predecessors, parents, subsidiaries, or affiliates, at any time during the period from January 1, 1999 to the present.

30. Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants or their co-conspirators. However, based on the nature of the trade and commerce involved, Plaintiff believes that Class members are sufficiently numerous – at least in the thousands -- and geographically dispersed so that joinder of all Class members is impracticable.

31. Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the Class members, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a direct purchaser of Filters and its interests are consistent with and not antagonistic to those of the other members of the Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

32. There are questions of law or fact common to the Class, including:

    (a) Whether Defendants and their co-conspirators combined or conspired to fix, raise, maintain or stabilize prices of Filters, rig bids or allocate customers for Filters;

    (b) Whether Defendants' combination or conspiracy as alleged in this Complaint violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

    (c) Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the other members of the Class;

    (d) Whether the effect of Defendants' conspiracy on the prices of Filters sold to purchasers in the United States during the Class Period caused Plaintiff and other Class members to pay more for Filters than they otherwise would have paid absent Defendants' conduct;

    (e) The appropriate nature of class-wide equitable relief; and

　　　　　(f)　　The appropriate measure of damages sustained by Plaintiffs and other members of the Class.

　　　　33.　　These and other questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

　　　　34.　　A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This Class action presents no difficulties in management that would preclude maintenance as a class action.

　　　　35.　　Finally, the Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

## INDUSTRY BACKGROUND

　　　　36.　　An oil filter is a device used to remove particulate matter and otherwise decontaminate oil, and is found in nearly every vehicle and other internal combustion engine sold in the United States. The filtration of oil in engines is essential for enhancing engine longevity and performance and preventing premature wear.

　　　　37.　　A fuel filter is used in the fuel system of almost any fuel-burning engine to screen out dirt, rust and other contaminants from the fuel. All of the fuel that enters the engine must first pass through the fuel filter, and these filters are found in most internal combustion engines.

Fuel filters improve an engine's performance, as the fewer contaminants present in the fuel, the more efficiently it can be burned.

38.     An engine air filter removes soot, carbon, abrasives and other contaminants from the air before the air mixes with fuel in an engine's air induction system. The engine air filter is used to prevent abrasive particulates from entering the engine, which can damage cylinder walls, pistons and piston rings.

39.     A cabin air filter captures airborne contaminants such as soot, dirt, pollen, and other pollutants, that enter a vehicle cabin through its heating, ventilating and air conditioning ("HVAC") system. A cabin air filter also prevents leaves, dirt, bugs and other debris from entering the HVAC system and negatively impacting its operation.

40.     A coolant filter is used on most types of fluid-cooled engines. These filters help to maintain proper engine heat transfer by filtering solid contaminants from the coolant and by minimizing corrosion and deposits in the cooling system.

41.     A hydraulic filter is used for a variety of applications for heavy truck, off-highway, agricultural, and construction vehicles and equipment, which depend on hydraulic fluids to power many of their critical functions.

42.     A transmission filter prevents harmful contaminants from entering a transmission's hydraulic system, where they could increase wear and cause scoring and sticking of hydraulic control valves. Additionally, if a major part fails inside the transmission, the filter may prevent pieces of that part from contributing to a more catastrophic transmission failure. Normally transmission filters trap metal chips from hard parts like gears and bushings and the normal fine material that results from wear of the hydraulic clutch facings and bands.

43. Filters become less effective over time as contaminants are filtered out of the respective engine systems, and therefore filters must be replaced periodically. Replacement filters are purchased to replace original equipment filters included in new combustion engines.

44. Filters are typically detachable units that require regular service or replacement. They are essentially fungible products.

45. Oil, air, fuel, cabin, coolant, hydraulic, and transmission filters are primarily sold into two separate channels: (i) to Original Equipment Manufacturers ("OEM") and (ii) to aftermarket sellers of replacement Filters ("Aftermarket Sellers").

46. OEMs purchase filters for use in connection with new vehicles. These filters are installed in vehicles during the production process.

47. Aftermarket Sellers purchase Filters directly from Defendants for wholesale or retail sale to the public, either (i) in connection with professional services rendered to an indirect purchaser (for example, an oil filter sold to a customer as part of an oil change) or (ii) for individuals to replace their own Filters.

48. Filter manufacturers such as Defendants sell Filters primarily to OEMs and Aftermarket Sellers, such as Plaintiff and other members of the Class. The allegations in this Complaint involve the Filters aftermarket.

49. Defendants are the primary manufacturers of aftermarket Filters in the United States.

50. The United States Filters markets are highly concentrated, with just a handful of major producers manufacturing and producing these products. This concentration, as well as interlocking business arrangements, assisted Defendants in successfully implementing their conspiracy. For example, in April 2006, Defendant ArvinMeritor sold Defendant Purolator to

11

Defendants Bosch and Mann + Hummel. Defendants Bosch and Mann + Hummel now operate Defendant Purolator as a joint venture. Mann + Hummel CEO Dieter Seipler has stated that "it was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world."

51. Annual revenues for Filters are approximately $3-5 billion in the United States.

### DEFENDANTS' UNLAWFUL CONDUCT

52. During the Class Period, Defendants and their co-conspirators conspired or combined to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States. They accomplished this by, among other things, (i) face-to-face meetings at industry trade shows and other locations and (ii) exchanging confidential information and communications regarding pricing.

53. The purpose of these secret, conspiratorial meetings, discussions and communications was to ensure that all of the Defendants agreed to participate in and implement an unlawful, continuing price-fixing scheme.

54. As a result of their unlawful agreement, Defendants implemented at least three coordinated price increases, rigged bids and allocated customers for Filters during the Class Period.

55. In formulating and effectuating their combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, including:

(a) Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile and electronic mail regarding the sale of Filters;

(b) Agreeing to charge prices for Filters at specified levels and to allocate customers and otherwise fixing, increasing, maintaining or stabilizing the prices of Filters sold to purchasers in the United States;

    (c) Agreeing not to compete for one another's customers by, among other things, not submitting prices or bids to certain customers or by submitting intentionally high prices or bids to certain customers;

    (d) Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreement reached;

    (e) Accepting payment for Filters sold in the United States and elsewhere at collusive and non-competitive prices;

    (f) Communicating with one another to discuss the prices, customers, markets and price levels of Filters sold in the United States;

    (g) Authorizing or consenting to the participation of employees in the conspiracy; and

    (h) Concealing the conspiracy and conspiratorial contacts through various means.

  56. At least as early as 1999, Defendants and their co-conspirators had many confidential discussions with each other and extensive communications regarding pricing and customers. This conspiratorial conduct resulted in an unlawful agreement to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States.

  57. For example, during the Class Period Defendants provided information regarding their planned price increases to their competitors before they provided it to customers or the general public, for the purpose of ensuring that their competitors were aware of and would abide by their agreement to follow their competitors' price increases.

  58. Defendants also met face-to-face regarding their respective companies' contemplated price increases, including at industry trade shows, including the Heritage Show and

13

the annual Filter Council meeting, both in Nashville, Tennessee. The Filter Council meeting was used as a vehicle to further the anticompetitive purposes of Defendants' unlawful conspiracy.

59. Pursuant to their unlawful agreement, Defendants each instituted similar price increases for Filters during the Class Period, including in 1999, early 2004 and late 2004/early 2005. These price increases were approximately 4 – 6 percent each.

60. On January 19, 2006, William G. Burch, former employee of both Purolator N.A. L.L.C. and Champion Laboratories, Inc., filed a complaint against Champion Laboratories in state court in Tulsa, Oklahoma, alleging, among other things, that Burch was wrongfully terminated from his employment with Champion Laboratories for knowing about, and subsequently reporting to authorities, the antitrust violations alleged in this Complaint. Mr. Burch's complaint was removed to federal court and then transferred to the United States District Court for the Southern District Illinois for consolidation with a subsequently filed action, *Champion Laboratories, Inc. v. Burch*, 06-CV-4031 (JPG) (S.D. Ill.), which is currently set for trial in September 2008.

61. On March 25, 2008, Mr. Burch, a former National Accounts and Division Sales Manager for Defendant Champion, executed an affidavit under oath in connection with the *Champion Laboratories* case. Mr. Burch's affidavit, purporting to be based on his personal knowledge, states in part:

(a) Burch "became aware that Champion was involved in activities with Champion's competitors that constitute price fixing. For example, Champion provided information concerning price increases to competitors before it provided that information to consumers or to the general public. Champion was also given advance information about price increases by its competitors. Further information is set forth accurately and in detail in the

mediation statement dated September 21, 2007, that I understand will be filed under seal in this case."

(b)　　Burch also stated that "[d]uring the time I worked for Champion, I was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion. I refused to conduct those discussions."

62.　　Defendants' conduct during the Class Period in collusively fixing, increasing, maintaining or stabilizing prices, rigging bids and allocating customers was for the sole purpose of foreclosing price competition in order to maintain artificially high prices for their Filters.

63.　　By coordinating their pricing activities and allocating customers, Defendants have removed from Plaintiff the ability to constrain Defendants' pricing by moving (or threatening to move) its Filter business from one Defendant to another in response to price increases.

64.　　Absent their coordinated activity, Defendants would have been forced to price Filters competitively or risk losing the significant business of their Filter customers, including Plaintiff. With unrestrained competition, Defendants would have been forced to forego their price increases altogether, implement smaller ones, or even decrease their prices in order to retain these customers.

65.　　The likelihood that Defendants would have moderated their price increases or, indeed, decreased their prices is particularly strong in the face of Champion's developments in filter technology which have reduced the amount of steel used in its Filters.

66.　　As a result of Defendants' unlawful conspiracy, Plaintiff has been forced to pay supracompetitive prices for Defendants' Filters.

**FRAUDULENT CONCEALMENT**

67.　　Defendants fraudulently concealed their participation in the conspiracy alleged in this Complaint by, *inter alia*, engaging in secret meetings and communications in furtherance of

15

the conspiracy, and by holding themselves out to the public and their customers, including Plaintiff, as true competitors.

68. Because of such fraudulent concealment and the inherently self-concealing nature of this conspiracy, Plaintiff could not have discovered the existence of this conspiracy until shortly before this action was commenced.

69. Defendants concealed their unlawful conspiracy in several ways, including public announcements that the price increases were due to the increases in the price of steel and that they were meeting the price increases of their competitors. At no time in their public statements did Defendants disclose their collusive conduct which formed all or a significant part of the basis for Defendants' prices and price increases.

70. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any statute of limitations otherwise applicable to the allegations in this Complaint has been tolled.

## CLAIM FOR RELIEF

### (Sherman Act Section 1 - Horizontal Price-Fixing Against All Defendants)

71. Beginning at least as early as January 1, 1999 and continuing thereafter through the present, the exact dates being unknown to Plaintiff, Defendants combined or conspired to fix, raise, maintain or stabilize prices, rig bids and allocate customers of Filters in the United States, the purpose and effect of which is to maintain supracompetitive prices for their Filters. This conspiracy is illegal *per se* under Section 1 of the Sherman Act, 15 U.S.C. § 1.

72. This conspiracy consists of a continuing understanding and concert of action among Defendants to coordinate their Filter prices.

73. This conspiracy has foreclosed and restrained competition among Defendants and caused Plaintiff and the Class to pay artificially high prices for Defendants' Filters.

74. As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged herein, Plaintiff and other members of the Class have been injured in their business and property in an amount not presently known in that they paid more during the Class Period for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests:

A. That the Court certify the Class pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and adjudge Plaintiff to be an adequate representative thereof;

B. That the Court find and declare Defendants' unlawful combination or conspiracy as alleged in this Complaint to be a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C § 1;

C. That the Court award Plaintiff and the Class damages against Defendants and their co-conspirators, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

D. That the Court permanently enjoin Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf from in any manner:

(1) continuing, maintaining or renewing the combination or conspiracy alleged herein, or from engaging in any other combination or conspiracy having a similar purpose or effect, and from adopting or

     following any practice, plan, program or device having a similar purpose or effect; and

 (2) communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of Filters information concerning prices, customers, markets or other terms or conditions of sale of any such product except to the extent necessary in connection with bona fide sales transactions between the parties to such communications.

E. That the Court award Plaintiff and the Class expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law;

F. That the Court award Plaintiff and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G. That the Court award Plaintiff such additional relief as it may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury of all issues so triable.

Date: May 14, 2008    By: /s/ Douglas A. Millen
              Michael J. Freed (ARDC No. 0869120)
              Steven A. Kanner (ARDC No. 3125292)
              William H. London (ARDC No. 6196353)
              Douglas A. Millen (ARDC No. 6226978)
              **FREED KANNER LONDON & MILLEN LLC**
              2201 Waukegan Road, Suite 130
              Bannockburn, IL  60015
              Telephone: (224) 632-4500
              Facsimile:  (224) 632-4521
              Email: mfreed@fklmlaw.com
                 skanner@fklmlaw.com
                 wlondon@fklmlaw.com
                 dmillen@fklmlaw.com

W. Joseph Bruckner
Heidi M. Silton
Anna M. Horning Nygren
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
Email: wjbruckner@locklaw.com
hmsilton@locklaw.com
amhorningnygren@locklaw.com

Jayne Goldstein
**MAGER & GOLDSTEIN LLP**
1640 Town Center Circle, Suite 216
Weston, FL 33326
Tel: (954) 515-0123
Fax: (954) 515-0124
Email: jgoldstein@magergoldstein.com

Lee Albert
**MAGER & GOLDSTEIN LLP**
1818 Market Street, Suite 3710
Philadelphia, PA 19103
Tel: (215) 640-3280
Fax: (215) 640-3281
Email: lalbert@magergoldstein.com

Dennis J. Stewart
**HULETT, HARPER, STEWART, LLP**
550 West C Street, Suite 1600
San Diego, CA 92101
Tel: (619) 338-1133
Fax: (619) 338-1139
Email: dstewart@hulettharper.com

*Counsel for Plaintiff Pawnee/S.A.E. Warehouse, Inc. and the Proposed Class*